IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA

| | | |
|---|---|---|
| Daniel E. Chase, an individual, | ) | |
| Steven J. Meister, an individual, | ) | |
| William David, an individual, | ) | Civil File No. 05-3010 ADM/AJB |
| Jay Andrews, an individual, | ) | |
| Raymond Tetrault and Sally N.Tetrault, | ) | |
| an individual, | ) | |
| Norman O. Tetrault and Rita J. Tetrault, | ) | |
| individuals, | ) | |
| Rita Ambourn and Michael Ambourn, | ) | |
| individuals, | ) | |
| and | ) | |
| Steven J. Sadowski, an individual, | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| vs. | ) | **Complaint** |
| | ) | |
| Neulan D. Midkiff, an individual, | ) | |
| Neulan David Midkiff, Jr., an individual, | ) | |
| Donna Midkiff, an individual, | ) | |
| Central Financial Services, LLC | ) | |
| and Joshua Tree Group, LLC, | ) | |
| a Nevada limited liability company | ) | |
| | ) | |
| **Defendants.** | ) | |

Plaintiffs Daniel E. Chase ("Chase"), Steven J. Meister ("Meister"), William David ("David"), Jay Andrews ("Andrews"), Raymond Tetrault and Sally N. Tetrault ("Tetrault I"), Norman O. Tetrault and Rita J. Tetrault ("Tetrault II"), Rita Ambourn and Michael Ambourn ("Ambourns") and Steven J. Sadowski ("Sadowski"), (collectively the "Plaintiffs") file this Complaint against Defendants Neulan D. Midkiff, an individual ("Midkiff"), Neulan David Midkiff, Jr., an individual, Donna Midkiff, an individual, Central Financial Services, LLC, and Joshua Tree Group, LLC, a Nevada limited liability company (collectively "Defendants").

SCANNED
DEC 3 0 2005
U.S. DISTRICT C[OURT] MPLS

## I. Background

1. This matter involves a fraudulent "high yield investment program" or "prime bank" scheme. The Defendants and their associated entity(ies) have offered and sold investments in purported foreign and international bank deposit programs (the "Bank Deposit programs") to investors in Minnesota.

2. In meetings with Plaintiffs over a period of approximately twenty one months Defendants enticed each of the Plaintiffs to invest by promising monthly returns of seven to twelve percent with "no risk" to investment principal.

3. Defendants provided Plaintiffs a confidential copy of a "bond" which purported to insure their investments with the Defendants.

4. Each of the Plaintiffs made incremental investments from $13,000.00 to $1,000,000.00 with Defendants over the period March, 2004 through December, 2005. The total invested by the Plaintiffs exceeds $3,000,000.00.

5. In fact, the Bank Deposit programs do not exist and Defendants are conducting a "Ponzi" scheme with Plaintiffs funds commingled with those of other victims of the fraud, and the "investment returns" paid to Plaintiffs and other investors from the proceeds of more recent investors.

6. Payments to the Plaintiffs ceased on or about December 7, 2005.

7. By reason of these activities, Defendants have violated Sections 5(a), 5(c) and 17(a) of the Securities Act of 1993 ("Securities Act") [15 U.S.C. Sections 77e(a), 77e(c) and 77q(a)], Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act"), [15 U.S.C. Section 78j(b)]and Rule 10b-5 thereunder [17 C.F.R. Section 240.10b-5].

15. Defendants have advised each of the Plaintiffs by in person meetings and telephone conversations that they were investing in "bank deposit programs" and programs providing investments in "overnight trading of bank-issued notes" through Defendant Midkiff and initially Central Financial Services LLC, and later Joshua Tree Group LLC and that each Plaintiff's funds would be pooled with the other's funds and with third parties to obtain the investment yields described.

16. Defendants Neulan D. Midkiff, Donna Midkiff and Neulan David Midkiff, Jr. in face to face meetings with Plaintiffs described the investment variously as investments "in overseas banks for fractional trading in private placement trading ventures"; as a private banking investment in which investor funds are "pooled"; claimed to have three to four years of history with investments of this type; and asked Plaintiffs to identify others who may want to invest in their "programs."

17. Each of the Plaintiffs was told that the investment was for a fixed period of time as established in a contract (One Year Funds Preliminary Agreement)which each Plaintiff signed.

18. Each of the Plaintiffs were required to and didi complete a "New Client Information Sheet", a "Non-Solicitation" Document and a sworn declaration that the funds invested were not derived from criminal activity.

19. Each of the Plaintiffs remitted funds (Chase- $2,000.000.00; Meister- $100,000.00; David- $250,000.00; Andrews- $254,000.00; Tetrault I- $175,000; Tetrault II- $50,000.00; Ambourns-$220,000.00; and Sadowski-$250,000.00) to Defendants Midkiff and Joshua Tree, a limited liability company controlled by Midkiff, by check or

wire transfer, and after a thirty to sixty day waiting period each Plaintiff would receive monthly payments.

20. Defendants assured each of the Plaintiffs that his/her investment was safe and that anyone who invested could get their principal returned upon request.

21. On June 15, 2005 Defendant Neulan Midkiff sent Plaintiffs a letter that stated, "We would like to inform you that all of our programs are now bonded with Nationwide Insurance."

22. In a September, 2005 meeting with Plaintiffs Chase, Andrews, and Defendants Neulan David Midkiff and Neulan Midkiff, Neulan Midkiff stated that he was a licensed Minnesota insurance broker and that the accounts invested with him were insured for $1,000,000,000.00.

23. Payments made by each of the Plaintiffs were pooled with other investor funds and forwarded to Joshua Tree Group LLC and other entities.

## CLAIMS

## FIRST CLAIM

### Violations of Section 10(b) of the Exchange Act and Rule 10b-5 Thereunder

Plaintiffs repeat and incorporate paragraphs 1 through 23 of this Complaint by reference.

24. Defendants, directly or indirectly, singly or in concert with others, in connection with the purchase and sale of securities, by use of the means and instrumentalities of interstate commerce and by use of the mails (a) has employed devices, schemes and artifices to defraud, (b) has made untrue statements of material facts and have omitted to state material facts necessary in order to make the statements

made, in light of the circumstances under which they were made, not misleading and (c) has engaged in acts, practices and course of business which operate as a fraud and deceit upon Plaintiffs and others.

25. As a part of and in furtherance of the scheme to defraud, Defendants, directly and indirectly, prepared, disseminated, used, issued and made oral presentations, false and misleading account statements, written offering documents, promotional materials, investor and other correspondence, which contained untrue statements of material facts and misrepresetnations of material facts and which omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, including, but not limited to, those set forth above.

26. Defendants made these misrepresetnations and omissions knowingly or with severe recklessness.

27. By reason of the foregoing, Defendants have violated Section 10(b) of the Exchange Act [15 U.S.C. Section 78j(b)] and Rule 10b-5 [17 C.F.R. Section 240.10b-5] thereunder.

## SECOND CLAIM

### Violation of Section 17(a) of the Securities Act

Plaintiffs repeat and incorporate paragraphs 1 through 27 of this Complaint by reference.

28. Defendants, directly or indirectly, singly or in concert with others, in the offer and sale of securities, by use of the mans and instruments of transportation and communication in interstate commerce and by use of the mails, have (a) employed

devices, schemes or artifices to defraud; (b) obtained money or property by means of untrue statements of material fact or omissions to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and (c) engaged in transactions, practices or courses of business which operate or would operate as a fraud or deceit.

29.   As part of an in furtherance of this scheme, Defendants, directly and indirectly, prepared, disseminated, used, issued and made oral presentations, false and misleading account statements, written offering documents, promotional materials, and investor and other correspondence, which contained untrue statements of material fact and which omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, including, but not limited to, those statements and omission set forth above.

### THIRD CLAIM

### Violations of Sections 5(a) and 5(c) of the Securities Act

Plaintiffs repeat and incorporate paragraphs 1 through 29 of this Complaint by reference.

30.   Defendants, directly or indirectly, singly or in concert with others, have offered to sell, sold certain securities and have been, directly and indirectly, (a) made use of the means and instruments of transportation and communication in interstate commerce and of the mails to sell securities, through the use of written contracts, offering documents and otherwise, (b) carrying and causing to be carried through the mails and in interstate commerce by the means and instruments of transportation such securities for

the purpose of sale and delivery after the sale, and (c) making use of the means or instruments of transportation and communication in interstate commerce an of the mails to offer to sell such securities.

31. No registration statement has been filed with the Securities and Exchange Commission or is otherwise in effect with respect to the offer and sale of any securities described herein.

32. By reason of the foregoing, Defendants have violated Sections 5(a) and 5(c) of the Securities Act [15 U.S.C. §§ 77e(a) and 77e(c)].

## FOURTH CLAIM

## BREACH OF CONTRACT

Plaintiffs repeat and incorporate paragraphs 1 through 32 of this Complaint by reference.

33. Defendants entered into a written agreement with Plaintiffs in the form of a One Year Funds Preliminary Agreement in order to obtain additional investments and to execute the fraudulent scheme.

34. Plaintiffs relied upon this agreement in making investments with Defendants

35. Defendants have failed to perform under the Agreement despite demands from Plaintiffs and each has been damaged in the amount(s) indicated herein.

## FIFTH CLAIM

## UNJUST ENRICHMENT

Plaintiffs repeat and incorporate paragraphs 1 through 35 of this Complaint by reference.

36. A benefit was conferred upon Defendants by Plaintiffs in the form of payment of amounts under Defendants' fraudulent investment scheme.

37. Plaintiffs paid in excess of $3,299,000.00 to Defendants as part of the Defendants' scheme.

38. This benefit was accepted and retained by Defendants.

39. The acceptance and retention of this benefit by Defendants is such that it would be inequitable for Defendants to retain this benefit.

40. Defendants have been unjustly enriched in the liquidated amount of $3,299,000.00.

WHEREFORE, Plaintiffs respectfully request the order of the Court granting judgment against Defendants in the amount of $3,299,000.00, as to each Plaintiff as specified in this Complaint, interest on this amount from the dates paid, their reasonable attorneys fees incurred herein, and such other relief as the Court deems just and proper.

Date: December 30 2005

PETER G. HILL, ATTORNEY

*Peter G Hill* (signature)

Peter G. Hill (Minn. Reg. No. 4510X)
P.O. Box 24082
Edina, MN 55424
952 926 3299
952 848 1991 (Facsimile)